WISCONSIN TELEPHONE COMPANY, Maple Telephone Coop, Inc., Novy's Telephone Company, Turtle Lake Telephone Company, Inc., Briggs & Stratton Corporation, Sentry Insurance Company, Towne Realty, Inc., and West Bend Mutual Insurance Company, Petitioners-Appellants,

v.

Wisconsin DEPARTMENT OF REVENUE, and Mark Musolf, as Secretary of the Wisconsin Department of Revenue, Respondents.†

Court of Appeals

No. 84–243. Submitted on briefs April 3, 1985.—
Decided June 25, 1985.
(Also reported in 371 N.W.2d 825.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

340

For the petitioners-appellants the cause was submitted on the briefs of *Timothy C. Frautschi* and *Foley & Lardner* of Milwaukee.

For the respondents the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Daniel D. Stier,* assistant attorney general.

Before Dykman, J., LaRocque, J., and Bruce F. Beilfuss, Reserve Judge.

BEILFUSS, Reserve Judge. Wisconsin Telephone Company and others appeal from a summary judgment which held sec. 77.52 (2) (a) 4., Stats., constitutional. The issue is whether the sales tax imposed by sec. 77.52 (2) (a) 4. on interstate telephone calls originating in Wisconsin and billed in Wisconsin telephones impermissibly burdens interstate commerce in violation of the commerce clause, U.S. Const. art. I, sec. 8, cl. 3. We hold it does not and affirm the trial court.

The facts are undisputed. A typical interstate telephone call made by a customer of appellant telephone companies will usually utilize their facilities, AT&T's Long Lines Department, and facilities of the telephone company which provides service to the person receiving the call in the destination state. Although these interstate long distance telephone calls generally require the use of telephone facilities of at least three companies located in two or more states, the entire cost of each call is billed by an appellant telephone company to the customer. Customers therefore pay appellant telephone companies for services rendered by the companies in Wisconsin and also for services provided by other companies outside Wisconsin.

A system exists for sharing the Wisconsin billed revenues with the other states' companies providing telephone facilities used in the completion of the call. In-

terstate call revenue of all the telephone companies is pooled and allocated pursuant to studies that attempt to determine operating expense and plant investment of the various companies attributable to their interstate operations. Because facilities are used interchangeably for intra and interstate service, the exact proportion of investment dedicated to interstate use cannot be determined.

From the monthly "pool" of revenues, the telephone companies and the AT&T Long Lines Department recover their interstate operating expenses, and any excess of revenue over expenses is allocated among them, premised on the ratio of each company's interstate plant investment to the total. The expenses and revenues recovered by the members of the Bell system also include expenses and revenues which are to be settled with and distributed to the independent telephone companies. This "division of revenues" determines the amount of each company's interstate revenues recorded on their books. Thus, there is no necessary relationship between the "billed revenues" and the "booked revenues" of a particular telephone company.

Section 77.52(2)(a)4., Stats., imposes a sales tax on:

The sale of telephone services of whatever nature including, in addition to services connected with voice communication, any services connected with the transmission of sound, vision, information, data or material other than by voice communication, and connection, move and change charges, except services paid for by insertion of coins in a coin-operated telephone and except interstate service, unless that interstate service originates from and is charged to a telephone located in this state.

The appellants argue that the tax violates the commerce clause because: (1) the interstate telephone "activity" lacks a sufficient nexus with Wisconsin; (2) the

tax is not apportioned to activity solely in Wisconsin and therefore creates the risk of multiple taxation of the interstate telephone activity outside Wisconsin; (3) the tax discriminates against interstate commerce; and (4) the tax is not fairly related to services provided by Wisconsin to the appellants.

## I. STANDARD OF REVIEW

The pleadings and affidavits present a claim and defense with no material facts at issue. Because this appeal involves only the application of law to undisputed facts, this court may decide the question independently, without deference to the trial court. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

## II. BURDEN OF PROOF

The challenger of a statute must prove its unconstitutionality beyond a reasonable doubt. "All statutes are presumed constitutional and will be held to be so unless proven otherwise beyond a reasonable doubt by the party attacking the statute. The cardinal rule of statutory construction is to preserve a statute and find it constitutional if it is at all possible to do so." *St. ex rel. Ft. How. Paper v. Lake Dist. Bd.,* 82 Wis. 2d 491, 505, 263 N.W.2d 178, 185 (1978). The presumption of constitutionality of a tax statute is strongest. *Simanco, Inc. v. Department of Revenue,* 57 Wis. 2d 47, 54, 203 N.W. 2d 648, 651–52 (1973).

We reject appellants' contention that a less demanding burden of proof applies to challenges based on the commerce clause. The appellants rely on *State v. Amoco Oil Co.,* 97 Wis. 2d 226, 293 N.W.2d 487 (1980), and *Dean Milk Co. v. Madison,* 340 U.S. 349 (1951). The

propositions cited by the appellants in these cases do not describe burdens of proof but rather establish standards for determining constitutionality. *See Dean Milk,* 340 U.S. at 354 (protectionist regulation weighed against character of local interest and availability of other means controlling milk quality) ; *Amoco Oil,* 97 Wis. 2d at 251, 293 N.W.2d at 500 (price advertising regulation's local benefit weighed against burden on commerce and availability of other means of regulating deceptive advertising). The constitutional standard sets forth the appropriate analysis while the burden of proof establishes the requisite degree of persuasion in applying that standard. To succeed, appellant telephone companies must show beyond a reasonable doubt that sec. 77.52(2)(a)4., Stats., impermissibly burdens interstate commerce.

Appellants assert that they "are not aware of any cases arising under the commerce clause where a 'beyond a reasonable doubt' standard has been applied." This court has applied that standard in a commerce clause case. *See State ex rel. Grand Bazaar v. Milwaukee,* 102 Wis. 2d 208, 220, 306 N.W.2d 255, 260 (Ct. App. 1981), *rev'd on other grounds,* 105 Wis. 2d 203, 313 N.W.2d 805 (1982).

III.  *CONSTITUTIONALITY OF TAX*

*Complete Auto Transit v. Brady, Inc.,* 430 U.S. 274, *reh. denied,* 430 U.S. 976 (1977), established the standard for determining the constitutionality of a state tax which affects interstate commerce. To withstand a challenge under the commerce clause a tax must: (1) apply to an activity having a substantial nexus with the taxing state; (2) be fairly apportioned; (3) not discriminate against interstate commerce; and (4) be fairly related to the services provided by the state. *Id.* at 279.

A.  *Substantial Nexus*

Appellants contend that an interstate phone call originating from and billed to a telephone in Wisconsin does not have a sufficient nexus with Wisconsin to justify the tax. They rely on *Midwestern Gas Transmission Co. v. Revenue Dept.*, 84 Wis. 2d 261, 271, 267 N.W.2d 253, 258 (1978), which struck down a use tax on gas consumed by two compressor stations because the consumption was an integral part of interstate commerce that did not have a substantial nexus with the state.

*Midwestern Gas* involved a gas pipeline from the Manitoba-Minnesota border to Marshfield, Wisconsin. The gas did not come to rest before reaching Marshfield. Wisconsin imposed a tax on the removal of small amounts of gas to power two compressor stations in Wisconsin before the gas reached Marshfield. These compressors provided the pressure needed to propel the gas through the pipeline. The taxpayer did not challenge the consumption tax imposed upon the gas when it reached its final destination. Because the tax was on consumption of small amounts of gas for the purpose of propelling the great bulk of gas in the pipeline in interstate commerce, the court found an insubstantial nexus to the taxing state. *Id.* at 271, 267 N.W.2d at 258.

The appellants argue that *Midwestern Gas* is on point because the interstate telephone call passing through Wisconsin, like the gas transmission, is taxed midstream in the process of interstate commerce before it has terminated, and without realistic separation from the process. We reject this argument. The sec. 77.52(2)(a)4., Stats., tax is not imposed on interstate activity midstream, but on the sale at the call's origin, an activity which occurs in Wisconsin. The sellers and buyers of

the telephone services are located in Wisconsin. The placing of the telephone call and subsequent billing occur in Wisconsin.

These factors sufficiently establish Wisconsin's nexus with these telephone service sales. The same factors establish that the sale of service is a local incident that is separate from the interstate process. *See Michigan-Wisconsin P.L. Co. v. Calvert,* 347 U.S. 157, 166 (1954) ("It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process . . . that it cannot realistically be separated from it.").

B. *Fair Apportionment and Risk of Multiple Taxation*

Appellants contend that the tax is not fairly apportioned and that it poses the risk of multiple taxation. Fair apportionment requires the avoidance of any unfair burden on interstate commerce resulting from more than one jurisdiction imposing the same tax on the same activity. The court stated in *Michigan-Wisconsin P.L.,* 347 U.S. at 170:

[The tax] would "permit a multiple burden upon that commerce," for if Texas may impose this "first taking" tax measured by the total volume of gas so taken, then Michigan and the other recipient states have at least equal right to tax the first taking or "unloading" from the pipeline of the same gas when it arrives for distribution. Oklahoma might then seek to tax the first taking of the gas as it crossed into that State. The net effect would be substantially to resurrect the customs barriers which the Commerce Clause was designed to eliminate. "The very purpose of the Commerce Clause was to create an area of free trade among the several States. That clause vested the power of taxing a transaction forming an unbroken process of interstate commerce in the Congress, not in the States." (Citations omitted.)

While sec. 77.52(2)(a)4., Stats., is an unapportioned tax, no risk of multiple taxation has been shown. An unapportioned tax, while suspect, is not per se unconstitutional. *General Motors Corp. v. Washington*, 377 U.S. 436, 448 (1964).

The *General Motors* court held an unapportioned tax constitutional because no actual multiple taxation was shown. 377 U.S. at 449. Other United States Supreme Court opinions require only a showing of a significant *risk* of multiple taxation to prove a tax unconstitutional. *See e.g., Standard Steel Co. v. Wash. Revenue Dept.*, 419 U.S. 560, 563 (1975). We need not resolve the conflict because appellants have failed to satisfy even the lesser standard of showing a significant risk of multiple taxation. A potential for multiple taxation is insufficient to establish a commerce clause violation.

The appellants argue that the existence of a gross receipts tax, which is found in eight other states and the District of Columbia, presents a risk of multiple taxation. They contend that revenues transferred from appellant telephone companies to telephone companies in those jurisdictions, pursuant to the pooling and division of revenues from interstate calls, will be subject to a gross receipts tax in those jurisdictions in addition to the Wisconsin sales tax.

Wisconsin also imposes a gross receipts tax on appellant telephone companies. Sec. 76.38(5), Stats. The tax is based on gross revenues derived from toll services which are attributable to Wisconsin. *Id.* The gross receipts tax and sales tax, however, are imposed on different transactions and property. The sales tax is imposed on the privilege of making retail sales of service to Wisconsin consumers. Sec. 77.52(2), Stats. The gross receipts tax is a surrogate property tax, which taxes

equipment and property as valued by revenue.[1]  Sec. 76.38.

The appellants have not shown how another jurisdiction might tax the sale of telephone services so as to establish a significant risk of multiple taxation. Practicalities appear to preclude the possibility. The seller is located in Wisconsin; the call originates from and is billed in Wisconsin. No similar sales tax can be practically imposed on the receiving or nonbilled telephone equipment because no sale is made there. The Supreme Court of Alaska reached a similar conclusion in *Douglas v. Glacier State Tel. Co.*, 615 P.2d 580, 588 (Alaska 1980) :

The Douglases make the bare assertion that a risk of multiple taxation . . . exists here because receipt of a call charged to a phone in the Borough could be taxed by another state to which the call is made. We disagree. The calls taxed by the Borough ordinance are only those charged to phones located within the Borough. Even if sufficient nexus to legally tax these calls in another state exists, the impracticality of doing so, in that the phone in another state is never billed for such calls, makes it extremely unlikely that any state or local entity would attempt to enact such a tax. The Douglases have cited no instance of any such attempt.

In addition, no other state would appear to have a legal right equal to Wisconsin's to impose a tax on the

---

[1] Intrastate Wisconsin telephone calls are subject to both taxes under secs. 77.52(2)(a)4., Stats. (sales), and sec. 76.38(5), Stats. (gross receipts). The Wisconsin gross receipts tax is apportioned. Sec. 76.38(5). That Wisconsin interstate calls may be subject to Wisconsin sales tax and some revenues derived from those calls subject to gross receipts tax elsewhere presents no tax burden different from that imposed on intrastate calls. Under these circumstances fair apportionment is not an issue because, as appellants state, "[t]he rationale for the fair apportionment requirement is that, otherwise, there would be a risk of multiple tax burden to which local [i.e. intrastate] commerce is not exposed."

sale of telephone service originating and billed in Wisconsin because of the lack of a comparable nexus. Appellants have not shown a significant risk of multiple taxation.

C. *Discrimination Against Interstate Commerce*

A tax does not discriminate against interstate commerce if it places interstate and intrastate activities on an equal footing. *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U.S. 33, 48–49 (1940). Section 77.52 (2) (a) 4., Stats., taxes equally each telephone call originating in Wisconsin and billed to a Wisconsin phone, whether the call is interstate or intrastate. The tax, therefore, does not discriminate against interstate commerce.

Appellants contend the tax discriminates against interstate commerce because it creates multiple burdens to which local commerce is not exposed. We rejected the multiple burden argument when discussing apportionment.

D. *Fair Relationship to Services Provided by the State*

The test of the tax's fair relationship to the benefits enjoyed is whether the state has given anything for which it can ask for something in return. *Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 444 (1940). This test is closely related to whether the interstate activity has a substantial nexus with the state. *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 625–26 (1981). The measure of the tax must be reasonably related to the extent of the contact with the state because the activity and its participants may properly be made to bear a just portion of the tax burden. *Id.* at 626.

The measure of the tax—the percentage of Wisconsin sales—need not be in precise proportion to the services provided in Wisconsin. A reasonable relation is required, and that standard is met here. The tax is imposed on calls originating from and billed in Wisconsin. Appellants are all incorporated, organized, or doing a substantial share of their business in Wisconsin. They enjoy police and fire protection, and other benefits of doing business within the state. The *Commonwealth Edison* court said:

When a tax is assessed in proportion to a taxpayer's activities or presence in a State, the taxpayer is shouldering its fair share of supporting the State's provision of "police and fire protection, the benefit of a trained work force," and "the advantages of a civilized society."

453 U.S. at 627 (citations omitted). Deference is accorded the legislature's determination of the appropriate level of taxation. *Id.* The tax is assessed in proportion to the companies' sales in Wisconsin. We conclude the sales tax is reasonably related to the services provided by Wisconsin.

### IV. *Use Tax*

Lastly, the appellants argue that "the use tax, which would be imposed in the absence of a sales tax, is invalid for the same reasons that the sales tax is invalid." Section 77.52(3), Stats., provides that "[t]he taxes imposed by this section may be collected from the consumer or user." We have concluded that their attack on sec. 77.52(2)(a)4. is without merit and therefore reject their challenge to sec. 77.52(3).

Appellants have not met their burden of proving sec. 77.52(2)(a)4., Stats., unconstitutional beyond a reasonable doubt. We therefore affirm the decision of the trial court.

*By the Court.*—Judgment affirmed.