(No. 64355.—

JEROME F. GOLDBERG *et al.*, Appellees, v. J. THOMAS JOHNSON, Director of Revenue, *et al.* (J. Thomas Johnson, Appellant).

*Opinion filed July 27, 1987.—Rehearing denied October 5, 1987.*

CLARK, C.J., and GOLDENHERSH and SIMON, JJ., took no part.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Terry F. Moritz, Alan P. Solow, Gerald L. Jenkins and Mindy Block Gordon, of Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., of Chicago, of counsel), for appellant.

William G. Clark, Jr., & Associates, Ltd., and Plotkin & Jacobs, Ltd., of Chicago (William G. Clark, Jr., John G. Jacobs, Jonah J. Orlofsky and Ilene Davidson Johnson, of counsel), for Jerome Goldberg and Robert McTigue.

Robert F. Ward and Laura Di Giantonio, of Chadwell & Kayser, Ltd., of Chicago (Richard N. Wiley, of counsel), for GTE Sprint Communications Corporation.

William C. Lane and William A. Strauss, of McLean, Virginia, for *amicus curiae* National Taxpayers Union.

Thomas W. Kelty and Michael J. Luke, of Pfeifer & Kelty, P.C., of Springfield, for *amicus curiae* Illinois Mu-

nicipal League.

PER CURIAM: Plaintiffs, Jerome F. Goldberg and Robert McTigue, filed a class action complaint in the circuit court of Cook County against defendant J. Thomas Johnson, Director of the Department of Revenue for the State of Illinois (hereinafter, the Director), and various long-distance telephone carriers, seeking a declaration that section 4 of the Telecommunications Excise Tax Act (hereinafter, section 4) (Ill. Rev. Stat. 1985, ch. 120, par. 2004) is unconstitutional. The complaint further requested an injunction against continued collection of the tax, an accounting and a refund of all taxes already collected. One of the defendant long-distance carriers, GTE Sprint Communications Corporation (GTE), answered and filed a counterclaim against the Director and James H. Donnewald, then Treasurer of the State of Illinois (hereinafter, the Treasurer). GTE's counterclaim sought a preliminary injunction, under section 2a of the State Officers and Employees Money Disposition Act (Money Disposition Act) (Ill. Rev. Stat. 1985, ch. 127, par. 172), ordering that all monies paid under protest pursuant to section 4 be retained in a protest fund until disposition of plaintiffs' action. In addition, GTE sought a declaration that section 4 is unconstitutional under the commerce clause of the United States Constitution (U.S. Const., art. I, sec. 8). Defendant MCI Telecommunications Corporation (MCI), joined by defendants Republic Telecom Corporation (Republic) and U.S. Telecom Communications Services Company, also moved for a preliminary injunction under the Money Disposition Act. In addition, MCI filed its counterclaim seeking a declaration that section 4 is invalid under the commerce clause. Defendants Satellite Business Systems (SBS) and American Telephone and Telegraph Company (AT&T) also filed motions for a preliminary injunction and for a declara-

tion finding section 4 unconstitutional. The court granted the motions for a preliminary injunction as provided by the Money Disposition Act. The other long-distance carriers named as defendants, Allnet Communications Services, Inc., Electronic Office Centers of America, Inc., Lexitel Corporation, Illinois Bell Telephone Company, International Telephone and Telegraph Corporation, TDX Systems, Inc., TMC Long Distance, and Western Union, did not file motions pursuant to the Money Disposition Act.

Plaintiffs then filed their emergency motion for a preliminary injunction and creation of a special escrow fund or, in the alternative, for an order that payments be made under protest. The court granted the motion and directed that all long-distance telecommunications carriers remit all monies collected pursuant to section 4 and ordered the Director and Treasurer to preserve these monies in a segregated protest fund until final disposition of plaintiffs' suit.

Plaintiffs also filed their motion for class certification as provided by section 2—801 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—801). The court denied this motion. In denying the motion, the court found that a class action was not necessary because all monies in dispute were segregated in a protest fund under the court's jurisdiction and control and, therefore, available for distribution to taxpayers in the event section 4 should be declared unconstitutional. The court also expressed doubts as to the adequacy of the named plaintiffs as representatives of the class.

The Director then filed a motion for summary judgment against defendants and counterplaintiffs GTE, MCI, and SBS on the ground that section 4 was constitutional. GTE responded with its cross-motion for partial summary judgment against the Director while plaintiffs filed their cross-motion for summary judgment against

all defendants. Both cross-motions were directed at the constitutionality of section 4. After briefing as well as a hearing, the court declared section 4 unconstitutional.

The court found that the taxable event under section 4 was an interstate telephone call and that "it is the phone call which is taxed and not the sale or purchase of that call." The court concluded that the tax violates the equal protection clause in that "[t]he Act does not treat all Illinois residents the same because it taxes only those who pay for the call and not those whose calls are paid for by others." The court also concluded that the tax violates the commerce clause because the "tax by its own terms is not fairly apportioned[;] [i]t discriminates against interstate commerce and it is not fairly related to services provided in Illinois."

The court granted plaintiffs' motion for summary judgment and GTE's motion for partial summary judgment. The court then entered its order that there was no just reason to delay an appeal (107 Ill. 2d R. 304(a)) and stayed its judgment, declaring section 4 unconstitutional, pending appeal. The court also allowed its prior order to stand that all monies collected pursuant to section 4 be paid under protest and maintained in a protest fund until exhaustion of appeals. Finally, the court denied plaintiffs' renewed motion for class certification. In doing so, the court changed its original position as to the adequacy of the plaintiffs as representatives of the proposed class but adhered to its prior view that class action status was neither appropriate nor necessary to the efficient resolution of the issues.

The cause comes before this court on the appeal of the Director pursuant to Supreme Court Rule 302(a) (107 Ill. 2d R. 302(a)) to consider the constitutionality of section 4 under the commerce clause and the equal protection clause. For reasons later discussed, we find it unnecessary to address the merits of plaintiffs' cross-

appeal on the denial of their motions for class certification.

We also accepted two *amicus curiae* briefs. The National Taxpayers Union filed a brief on behalf of the plaintiffs. The Illinois Municipal League filed a brief on behalf of the Director.

The Director initially attacks the court's characterization of section 4. He contends that the court erred in finding that section 4 taxes the interstate telecommunication itself. According to the Director, the interstate telecommunications tax is a retail tax on the purchase of an interstate telecommunication either originating in or received in Illinois. However, under either characterization of the tax, the Director argues that the tax is valid under the four-part test set forth by the Supreme Court in *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 287, 51 L. Ed. 2d 326, 336, 97 S. Ct. 1076, 1083.

Plaintiffs and defendant GTE contend that the circuit court accurately found that the interstate telecommunications tax is a tax directly on telecommunications originating or received in Illinois. Agreeing that *Complete Auto* establishes the proper test, they argue that the tax violates the commerce clause because, as the circuit court concluded, it is not fairly apportioned, it discriminates against interstate commerce, and it is not fairly related to services provided by Illinois. Under *Complete Auto*, a tax which bears on interstate commerce is valid if: (1) there is a substantial nexus between the activity taxed and the taxing State; (2) it is fairly apportioned so that it is limited to that portion of the interstate activity occurring within the taxing State; (3) it does not discriminate against interstate commerce; and (4) it is fairly related to services provided by the taxing State. 430 U.S. 274, 287, 51 L. Ed. 2d 326, 336, 97 S. Ct. 1076, 1083.

Section 4, in part, provides that "[a] tax is imposed upon the *act or privilege of originating or receiving in-*

*terstate telecommunications by a person in this State at the rate of 5% of the gross charge for such telecommunications purchased at retail from a retailer by such person."* (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 120, par. 2004.) Under this provision, the taxable event is the "act or privilege of originating or receiving interstate telecommunications by a person in this state" while the amount of the tax is determined by applying a 5% multiplier to the retail purchase price, defined as the "gross charge for such telecommunications" as charged to the retail purchaser in Illinois. Relying on this statutory language, the Director has applied various designations to the tax in issue. For example, the tax has been denominated as a "purchase tax," "a use tax, i.e. use of [a] privilege," "a tax on the privilege or act of using telecommunications within this State," "a consumption tax," and a tax on the "act, or *** privilege of consuming messages." However, for purposes of ascertaining whether or not commerce clause analysis applies, it is the taxable event and its practical consequences which are critical rather than the name of the tax or the manner which the tax is measured. (*American Trucking Associations, Inc. v. Scheiner* (1987), 483 U.S. ___, 97 L. Ed. 2d 226, 107 S. Ct. 2829, and *Commonwealth Edison Co. v. Montana* (1981), 453 U.S. 609, 615-17, 69 L. Ed. 2d 884, 893-94, 101 S. Ct. 2946, 2952-53, both quoting *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 279, 51 L. Ed. 2d 326, 331, 97 S. Ct. 1076, 1079.) Thus, the fact that section 4 establishes the purchase price of an interstate telecommunication as the basis upon which the tax is calculated does not transform the taxable event into a retail purchase which, by definition, is local, apportioned, nondiscriminatory, and fairly related to services provided by Illinois as required by *Complete Auto*. Since the taxable event in this case is the "act or privilege of originating or receiving interstate

telecommunications \*\*\* in this State," it is clear that the taxable event is linked inextricably to interstate activity—interstate communication. A person simply cannot make or receive an interstate telecommunication without activating and participating in a complex network of interstate transmissions culminating in interstate communication. We believe that such interstate communication is interstate commerce. The very process of interstate telecommunication is interstate commerce. (*Western Union Telegraph Co. v. Texas* (1882), 105 U.S. 460, 26 L. Ed. 1067; *Pensacola Telegraph Co. v. Western Union Telegraph Co.* (1878), 96 U.S. 1, 24 L. Ed. 708.) Moreover, it cannot be doubted that the interstate telecommunications here at issue are involved directly and indirectly in the conduct of interstate commerce. (*Cooney v. Mountain States Telephone & Telegraph Co.* (1935), 294 U.S. 384, 391-92, 79 L. Ed. 934, 940-41, 55 S. Ct. 477, 481.) It is clear, therefore, that the interstate telecommunications tax must be scrutinized under prevailing commerce clause holdings.

We agree with the parties that the four-part test enunciated by the Supreme Court in *Complete Auto* controls our decision on the commerce clause issue. (*Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 287, 51 L. Ed. 2d 326, 336, 97 S. Ct. 1076, 1083; see also *Wardair Canada, Inc. v. Florida Department of Revenue* (1986), 477 U.S. 1, 8-9, 91 L. Ed. 2d 1, 10, 106 S. Ct. 2369, 2373; *Japan Line, Ltd. v. County of Los Angeles* (1979), 441 U.S. 434, 444-45, 60 L. Ed. 2d 336, 345, 99 S. Ct. 1813, 1819; *Department of Revenue v. Association of Stevedoring Cos.* (1978), 435 U.S. 734, 750, 55 L. Ed. 2d 682, 697, 98 S. Ct. 1388, 1399.) We turn therefore to an analysis of the interstate telecommunications tax under the *Complete Auto* test.

Neither party disputes that Illinois has a sufficient connection both to the taxable event and the service lo-

cation to satisfy the first element of *Complete Auto*. The tax, by its terms, applies only to interstate telecommunications originating or received in Illinois and paid for in Illinois or billed to a service address in Illinois. Not only does the taxable event transpire in Illinois but the "gross charge" for the taxable event must be paid for in Illinois or billed to an address in Illinois. Consequently, Illinois is exacting a tax only on those interstate communications which touch the State and which are actually paid for in Illinois or are billed to service addresses located in Illinois. We have no doubt that these connections satisfy the nexus requirement of *Complete Auto*.

The second element of the *Complete Auto* test is fair apportionment of the tax to that portion of the taxable event occurring within the taxing State. Since the instant tax applies to the entirety of each and every interstate telecommunication, it is not an apportioned tax. An unapportioned tax, however, is not necessarily invalid. (*Wisconsin Telephone Co. v. Wisconsin Department of Revenue* (1985), 125 Wis. 2d 339, 347, 371 N.W. 2d 825, 830.) Such a tax, of course, is constitutionally suspect because of the risk of multiple taxation. Indeed, the requirement of apportionment is significant principally because it helps to insure that the tax will not discriminate against interstate commerce by subjecting it to actual or potential multiple taxation. (*Container Corp. of America v. Franchise Tax Board* (1983), 463 U.S. 159, 170-71, 77 L. Ed. 2d 545, 557, 103 S. Ct. 2933, 2943; *Japan Line, Ltd. v. County of Los Angeles* (1979), 441 U.S. 434, 446-47, 60 L. Ed. 2d 336, 347, 99 S. Ct. 1813, 1820.) Therefore, the fact that the instant tax is unapportioned does not mean that it is necessarily unconstitutional under the commerce clause. If the tax avoids the pitfall of multiple taxation, or the risk of such taxation, it is nondiscriminatory; and, the fact that it is unapportioned is not constitutionally significant. In this regard, we note that the

tax does not discriminate in favor of intrastate telecommunications since section 3 of the Telecommunications Excise Tax Act imposes the same 5% levy "upon the act or privilege of originating in this State or receiving intrastate telecommunications by a person in this State." Ill. Rev. Stat. 1985, ch. 120, par. 2003.

The interstate telecommunications tax applies under either of two circumstances: (1) the origination, in Illinois, of an interstate telecommunication which is paid for in Illinois or billed to a service address located in Illinois or (2) the reception, in Illinois, of an interstate telecommunication which is billed to a service address in Illinois. With respect to the origination of an interstate telecommunication in Illinois, it appears that, even though unapportioned, no other taxing entity could levy a tax on this taxable event. (*Wisconsin Telephone Co. v. Wisconsin Department of Revenue* (1985), 125 Wis. 2d 339, 348, 371 N.W.2d 825, 830-31; *Douglas v. Glacier State Telephone Co.* (Alaska 1980), 615 P.2d 580, 588.) Where no other taxing body can levy the tax being challenged, it is clear that there is no risk of multiple taxation and, consequently, no discrimination against interstate commerce. *Tyler Pipe Industries, Inc. v. Washington Department of Revenue* (1987), 483 U.S. ___, 97 L. Ed. 2d 199, 107 S. Ct. 2810; *Armco Inc. v. Hardesty* (1984), 467 U.S. 638, 644, 81 L. Ed. 2d 540, 546, 104 S. Ct. 2620, 2623.

The situation is somewhat different with respect to the tax levied on the reception, in Illinois, of an interstate telecommunication which is billed to a service address located in Illinois. This tax appears to pose a risk of multiple taxation. Thus, this portion of the tax must be reviewed carefully to insure that it does not discriminate against interstate commerce.

Illustrating that there is a real risk of multiple taxation, the record reveals that at least two taxing jurisdic-

tions levy a tax similar to the instant tax insofar as it pertains to the reception of interstate telecommunications in Illinois. The municipality of Wheat Ridge, Colorado, imposes a sales tax "[u]pon telecommunications services *** for all interstate and intrastate telecommunications service originating from or received on telecommunications equipment in this city if the charge for the service is billed to a person in this city or billed to an affiliate or division of such person in any state/city on behalf of a person in this city." (Wheat Ridge, Colo., ordinance No. 630, sec. 21—4(b).) The municipality of Greeley, Colorado, imposes the identical tax. (Greeley, Colo., ordinance No. 45, sec. 1.) In comparison, as stated earlier, section 4 levies a tax on all interstate telecommunications received in Illinois and billed to a service address in Illinois. Reading these two provisions together, a collect interstate telecommunication sent from a business office in Wheat Ridge or Greeley, Colorado, to an affiliated office anywhere in Illinois would be taxed twice. Clearly, this is multiple taxation of the same interstate taxable event which would be prohibited by the commerce clause, as interpreted by *Complete Auto* and its progeny, except for the fact that section 4 provides a credit against any tax due from a taxpayer who has paid two or more taxes on the same interstate telecommunication. (Ill. Rev. Stat. 1985, ch. 120, par. 2004.) We believe that this provision cures any possible constitutional infirmity resulting from multiple taxation. (*Tyler Pipe Industries, Inc. v. Washington Department of Revenue* (1987), 483 U.S. ___, 97 L. Ed. 2d 199, 107 S. Ct. 2810; see *Henneford v. Silas Mason Co.* (1937), 330 U.S. 577, 81 L. Ed 814, 57 S. Ct. 535.) Consequently, the tax imposed upon the reception in Illinois of interstate telecommunications does not discriminate against interstate commerce. Thus, the third prong of *Complete Auto* is satisfied. It remains to determine whether or not the

telecommunications tax is valid under the fourth prong of *Complete Auto*, which requires that the tax be "fairly related to benefits provided the taxpayer."

The State in taxing the origination in Illinois of interstate telecommunications is taxing an event which is facilitated by services it provides both to the taxpayer and the interstate telecommunications carriers. Indeed, the services provided by the State facilitate perhaps the most critical step in the taxable event—interstate origination.

It is true that the State is taxing the "gross charge" of the entire interstate telecommunication even though the benefits it affords are limited to that portion of the communication occurring within the State. However, we believe that the benefits afforded by other States in facilitating the same interstate telecommunication are too speculative to override the substantial benefits extended by Illinois. (*Cf. Western Live Stock v. Bureau of Revenue* (1938), 303 U.S. 250, 259-60, 82 L. Ed. 823, 830, 58 S. Ct. 546, 550-51.) We believe that the instant tax is "fairly related to benefits provided the taxpayer" and, therefore, meets the fourth requirement of the *Complete Auto* test. *Commonwealth Edison Co. v. Montana* (1981), 453 U.S. 609, 625-29, 69 L. Ed. 2d 884, 899-902, 101 S. Ct. 2946, 2957-59.

We have scrutinized the interstate telecommunications tax under the test enunciated in *Complete Auto* and conclude that it is not an impermissible tax on interstate commerce. We hold that the tax is valid under the commerce clause. We turn now to a consideration of whether or not the tax levied on interstate telecommunications is constitutional under the equal protection clause of the Illinois and United States Constitutions.

It is well settled that a legislature has great latitude in determining the taxes it will impose. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 359,

364, 35 L. Ed. 2d 351, 354-55, 357, 93 S. Ct. 1001, 1003-04, 1006; *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 425; *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 425.) Further, it is well settled that a tax will be upheld, for purposes of equal protection, if there is any set of circumstances under which the legislative classification is, in fact, a rational exercise of the State's authority to tax. *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 364, 35 L. Ed. 2d 351, 358, 93 S. Ct. 1001, 1006; *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 425; *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 425.

Plaintiffs contend that it is arbitrary and irrational to exempt from taxation those interstate telecommunications originating in Illinois but paid for in other States, such as collect telephone calls, or those telecommunications billed to service addresses located in other States, such as credit-card telephone calls. In plaintiffs' view, persons originating such interstate telecommunications are situated no differently than persons originating interstate telecommunications in Illinois but who pay directly, as in a coin-operated telephone call, or who have the telecommunication billed to an Illinois service address. Since all persons in Illinois who originate interstate telecommunications are engaging in precisely the same activity, the plaintiffs conclude that the differential treatment of these two categories can have no rational basis and is manifestly arbitrary and capricious.

We disagree. In our view, there is a rational basis supporting imposition of the interstate telecommunications tax particularly insofar as the tax applies to those interstate telecommunications originating in Illinois and either paid for directly in Illinois or billed to a service address located in Illinois.

We note that those persons who originate interstate telecommunications in Illinois for which they neither pay nor are billed in Illinois are usually nonresidents of the

State. Being nonresidents, their ties to the State and any benefits which they may derive from being in the State are minimal. On the other hand, the ties to the State and benefits derived from the State which exist in the case of persons who originate telecommunications paid for or billed in Illinois are substantial. For this reason, we believe that the legislature could rationally decide to treat the interstate telecommunications neither paid for nor billed in Illinois differently, even if more favorably, than those interstate telecommunications which are paid for or billed in Illinois. The fact that a nonresident originating a noncollect interstate telecommunication from a coin-operated telephone pays the tax does not alter our analysis. Similarly, the distinction between the reception, in Illinois, of interstate telecommunications billed to service addresses in Illinois, on the one hand, and the reception of such telecommunications billed to non-Illinois service addresses, on the other, is rational because there is little or no basis for the State to tax nonresidents whose telecommunications originate outside of Illinois and are paid for or billed outside of Illinois. There is no substantial nexus between the State and these persons and no substantial nexus between the State and the place of payment or billing. Moreover, the State provides few, if any, services to nonresidents whose telecommunications are received in Illinois but neither paid for nor billed here. We conclude that the interstate telecommunications tax is constitutional under the equal protection clause of both the Illinois and United States Constitutions.

For the reasons stated herein, we hold that the instant tax is constitutional under the commerce clause and the equal protection clause and we reverse the judgment of circuit court of Cook County declaring the tax unconstitutional. Because of our disposition of the constitutional issues, plaintiffs' cross-appeal of the court's or-

507

ders denying motions for class certification is now moot and we vacate those orders. *George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 78; *First National Bank v. Kusper* (1983), 98 Ill. 2d 226, 236.

*Judgment reversed;*
*orders vacated.*

CLARK, C.J., and GOLDENHERSH and SIMON, JJ., took no part in the consideration or decision of this case.