MIDWESTERN GAS TRANSMISSION COMPANY, Respondent, v. DEPARTMENT OF REVENUE, Appellant.

*No. 76-106. Argued June 6, 1978.—Decided June 30, 1978.*
(Also reported in 267 N.W.2d 253.)

For the appellant the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Wheeler, Van Sickle, Anderson, Norman & Harvey, S. C.* of Madison, and oral argument by *Paul R. Norman.*

HANLEY, J.  The sole issue presented on this appeal is whether natural gas consumed at the taxpayer's Wisconsin compressor stations is subject to the Wisconsin use tax, sec. 77.54 (1), Stats.

The department seeks to impose a tax on that amount of natural gas consumed by the taxpayer at its two pumping stations pursuant to sec. 77.53 (1), Stats. This section provides:

"Imposition of use tax. (1) An excise tax is hereby levied and imposed on the storage, use or other consumption in this state of tangible personal property or taxable services described in s. 77.52 purchased from any retailer on or after February 1, 1962, at the rate of 3% of the sales price of the property or taxable services; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4%."

The department does not claim that the tax is imposed on the taxpayer's storage of natural gas in this state, but rather claims that the taxpayer uses or consumes the gas within the meaning of the statute. Furthermore, neither party disputes the facial applicability of this taxing section to the taxpayer's use of natural gas except as it may be exempt from taxation under sec. 77.54(1), Stats. This section provides:

"General exemptions. There are exempted from the taxes imposed by this subchapter:
"(1) The gross receipts from the sale of and the storage, use or other consumption in this state of tangible personal property and services the gross receipts from the sale of which, or the storage, use or other consumption of which, this state is prohibited from taxing under the constitution or laws of the United States or under the constitution of this state."

After an administrative hearing to review the department's refusal to redetermine its assessment, the Commission concluded, *inter alia*, that the assessment was not "prohibited by Article I, Section 8, Clause 3 of the United States Constitution" and thus was not "exempt within the intent and meaning of sec. 77.54(1) of the Wisconsin Statutes." The circuit court, however, concluded that the tax violated the Commerce Clause and for that reason reversed the order of the Commission.

■

The resolution of the conflict between the constitutional protection of free interstate commerce and the states' reserved power to tax must be accomplished on a case-by-case basis, with the particular facts and statutory

characteristics determining the outcome. *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 329 (1977).

In *Michigan-Wisconsin Pipe Line Co. v. Calvert,* 347 U.S. 157, 165 (1954), the Court stated generally, "Under the Commerce Clause interstate commerce and its instrumentalities are not totally immune from state taxation, absent action by Congress." Rather, the Court continued, "It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it." *Michigan-Wisconsin Pipe Line Co. v. Calvert, supra* at 166.

The department asserts that "the tax imposed is nondiscriminatory and has not been shown to be unreasonable in its exaction in relation to the benefits granted by the goverenment of this state." (A. Brief at 8). This is essentially true. Nowhere does the taxpayer claim that the use tax imposed by sec. 77.53, Stats., discriminates against interstate commerce in favor of local enterprise. Nor has the taxpayer demonstrated that the tax is unreasonably disproportionate to benefits derived from the state. What the taxpayer does claim, however, is that the tax, as applied to the facts of this case, is an improper burden upon an activity which is an integral and inseparable part of the interstate flow of its natural gas. In support of this claim, the taxpayer relies principally on *Helson and Randolph v. Kentucky,* 279 U.S. 245 (1929) (hereinafter *Helson*).

In *Helson,* the taxpayers, citizens and residents of Illinois, were in the business of operating a ferry on the Ohio River between Illinois and Kentucky. The taxpayers purchased gasoline to fuel the vessel's engines in Illinois, although seventy-five percent of it was consumed within the limits of Kentucky. Kentucky, which taxed

all gasoline sold or used within the state, sought to impose the tax on that portion of the ferry's fuel consumed in Kentucky waters. The Supreme Court found the tax violative of the Commerce Clause, stating:

"The tax is exacted as the price of the privilege of using an instrumentality of interstate commerce. It reasonably cannot be distinguished from a tax for using a locomotive or a car employed in such commerce. A tax laid upon the use of the ferry boat, would present an exact parallel. And is not the fuel consumed in propelling the boat an instrumentality of commerce no less than the boat itself? A tax, which falls directly upon the use of one of the means by which commerce is carried on, directly burdens that commerce. If a tax cannot be laid by a state upon the interstate transportation of the subjects of commerce, as this Court definitely has held, it is little more than repetition to say that such a tax cannot be laid upon the use of a medium by which such transportation is effected. 'All restraints by exactions in the form of taxes upon such transportation, or upon acts necessary to its completion, are so many invasions of the exclusive power of Congress to regulate that portion of commerce between the States.' *Gloucester Ferry Co. v. Pennsylvania, supra,* p. 214." *Helson and Randolph v. Kentucky, supra* at 252.

In 1936, *Helson* was expressly followed by the Court in invalidating a state tax imposed upon the use of motor fuel to effect the movement of buses in interstate commerce. *Bingamen v. Golden Eagle Western Lines, Inc.,* 297 U.S. 626 (1936).

State courts have more recently applied the rule in the *Helson* case to situations similar to the one presented here. In *Texas Gas Transmission Corp. v. Benson,* 223 Tenn. 279, 444 S.W.2d 137 (1969), the object of the state use tax was that amount of natural gas diverted from the taxpayer's main transmission lines to fuel compressor engines. Characterizing the taxing statute as imposing tax liability on goods which are stopped or brought to rest within the state for sale, use, consumption, distribu-

tion or storage, the Tennessee Supreme Court found that the fuel gas did not come to rest within the state but was a part of a continuous flow and "a necessary and integral part of the [taxpayer's] interstate operation." *Texas Gas Transmission Corp. v. Benson, supra* at 139. The court thereupon applied the *Helson* rule to hold that the taxpayer's use of gas was exempt from the use tax. The same result was also reached by the Michigan Court of Appeals in *Michigan Wisconsin Pipe Line Co. v. State,* 58 Mich. App. 318, 227 N.W.2d 334 (1975), wherein the taxpayer's use of natural gas tapped from a main transmission line to power compressor engines was held, under authority of *Helson* and *Texas Gas Transmission Corp.,* to be exempt from a use tax statute which imposed a levy on the "privilege of using, storing and consuming tangible property brought from out of the state after it has come to rest." *Michigan Wisconsin Pipe Line Co. v. State,* 227 N.W.2d at 335–37.

The department concedes that if the *Helson* case is still valid, it would require an affirmance in the instant case. The department, however, argues that the *Helson* decision has been modified by subsequent Supreme Court decisions so as to change the rule prohibiting the imposition of a state use tax on a substance used to fuel interstate commerce.

The department first relies on several Supreme Court decisions to support its contention that the Court has moved away from the *Helson* rule. *Coverdale v. Arkansas-Louisiana Pipe Line Co.,* 303 U.S. 604 (1938); *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U.S. 33 (1940); *Colonial Pipeline Co. v. Traigle,* 421 U.S. 100 (1975). We think, however, that the department's reliance on these cases is misplaced.

In *Coverdale v. Arkansas-Louisiana Pipe Line Co., supra,* the taxpayer was engaged in the business of producing and buying, transporting and selling natural gas.

The gas was obtained in Louisiana and over ninety-six per cent of it was delivered to customers outside the state. To move the gas through the pipeline, the taxpayer maintained a compressor station in Louisiana. Louisiana sought to impose a tax on the compressor under a statute which required a license tax to be paid by everyone within the state in the business of manufacturing or generating power for use in the conduct of business. Specifically, the statute imposed a tax of one dollar per annum per horsepower generated by a taxpayer in the state. The Supreme Court, characterizing "the tax as one imposing upon the privilege of producing . . . power," concluded that the statute was a valid exercise of the state's authority to impose a tax on the privilege of "carrying on a local business." *Coverdale v. Arkansas-Louisiana Pipe Line Co., supra* at 609–10.

The Court, relying on the distinction between taxes imposed on operations integral to and reasonably inseparable from the interstate movement of goods and those imposed upon operations related to but distinguishable from interstate commerce, concluded that the state statute which specifically taxed only the generation of power was not violative of the Commerce Clause. In reaching this result the Court did not overrule the *Helson* decision, however, but distinguished it as belonging "to the category of cases which construe the state tax acts involved as taxes on interstate commerce and its instrumentalities rather than on operations closely connected with but distinct from that commerce."

"Likewise, in the *Helson* case, this Court concluded that the tax on gasoline brought into the state and used on an interstate ferry was analogous to a tax on the use of the ferry itself in transit and therefore within the rule prohibiting state taxes on commerce. A narrow distinction in fact exists between the tax held invalid in the *Helson* case and the valid tax considered in *Nashville, C. & St. L. Ry. Co. v. Wallace,* 288 U.S. 249,

where a tax on gasoline brought into the state, stored and then used to drive engines in interstate transportation, was held valid. The storage and withdrawal was an intrastate, taxable event." *Coverdale v. Arkansas-Louisiana Pipe Line Co., supra* at 611–12.

Because the taxing statute in the instant case bears a stronger resemblance to the gasoline use tax invalidated in *Helson* than it does to the mechanically specific taxing statute upheld in *Coverdale,* we think that it would not be appropriate for this court to rely on the analysis in *Coverdale* to uphold the department's use tax assessment upon the natural gas used to fuel the taxpayer's compressor engines. *Coverdale* clearly indicates that the Supreme Court was not abandoning the rule of *Helson.*

In *McGoldrick v. Berwind-White Coal Mining, supra,* a divided Supreme Court upheld a New York sales tax imposed upon coal mined in Pennsylvania, stored in New Jersey and delivered in New York. The majority, reasoning that interstate commerce should pay its fair share of the tax burden, concluded that the sales tax did not discriminate against interstate commerce and that it was imposed upon a local activity distinct from commerce: "Its [the tax's] only relation to the commerce arises from the fact that immediately preceding transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce and brought to its journey's end." *McGoldrick v. Berwind-White Coal Mining Co., supra* at 49. But again, the Court's decision in *McGoldrick* to view the transfer of title to goods which have crossed state lines as an event distinct from commerce and taxable by the states does not vitiate the Court's earlier conclusion that the consumption of fuel to move goods in interstate commerce was indistinguishable from that commerce and not subject to a state use tax.

In *Colonial Pipeline Co. v. Traigle, supra,* the Court
upheld a Louisiana franchise tax imposed upon "the
privilege of carrying on or doing business in the state in
a corporate form." The Court emphasized the fact that
the statute has been amended "purposely to remove any
basis of a levy upon the privilege of carrying on an in-
trastate business and narrowly to confine the impost to
one related to appellant's activities within the state *in the
corporate form." Colonial Pipeline Co. v. Traigle, supra*
at 113–14. (Emphasis supplied.) Noting that although
it was not required to do so, the taxpayer voluntarily
qualified under Louisiana law to conduct its business in
that state in the corporate form and thereby derived
numerous benefits provided by the state, the Court con-
cluded that the tax was not improperly imposed "merely
or solely for the privilege of doing interstate business
in Louisiana." *Colonial Pipeline Co. v. Traigle, supra* at
113–14. Again, the taxable event in *Colonial Pipeline* is
readily distinguishable from that which was sought to
be taxed in *Helson* and that which is sought to be taxed
here.

Both parties cite *Complete Auto Transit, Inc. v. Brady,*
430 U.S. 274 (1977) and *Washington v. Association of
Washington Stevedoring Companies,* — U.S. —, 98 S. Ct.
1388, 55 L. Ed.2d 682 (1978) as authority sustaining
their respective positions on the issue involved.

In *Complete Auto Transit, Inc. v. Brady, supra,* Mis-
sissippi levied a gross receipts tax on the privilege of
doing business within the state. It applied the tax to the
appellant, a Michigan corporation transporting within
the state motor vehicles manufactured elsewhere. The
appellant's sole argument against the tax was that it was
the same type of direct taxation on the privilege of en-
gaging in interstate commerce as was previously invali-
dated in *Spector Motor Service, Inc. v. O'Connor,* 340
U.S. 602 (1951). The Court, viewing the appellant's ac-

tivity as being within interstate commerce, determined that because no absolute immunity from state taxation existed for interstate commerce, "a state tax on the 'privilege of doing business' is [not] *per se* unconstitutional when it is applied to interstate commerce. . . ." *Complete Auto Transit, Inc. v. Brady, supra* at 289. Consequently, *Spector Motor Service, Inc. v. O'Connor, supra,* was overruled. In *Washington v. Association of Washington Stevedoring Companies, supra,* the Court rejected the rule of previous decisions that the constitutionality of a state tax depended solely on whether it amounted to direct or indirect taxation on interstate commerce.

In these cases, the Court abandoned two tests which looked primarily to the language of the taxing statute in favor of an analysis of the economic consequence the tax would have on interstate commerce. The Court also indicated four criteria which a taxing statute must satisfy to be valid under this analysis: (1) the activity taxed must have a substantial nexus with the state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to services provided by the state. *Complete Auto Transit, Inc. v. Brady, supra* at 277, 287; *Washington v. Association of Washington Stevedoring Companies, supra* at 1399–1400.

Under this analysis, the key question here is whether the activity the department seeks to tax has a substantial nexus with the state. In this respect, the *Helson* determination that property which is used to fuel a vehicle of interstate commerce may not be subjected to a use tax remains relevant. That the Supreme Court has not abandoned this position is shown by its decision in *United Air Lines, Inc. v. Mahin,* 410 U.S. 623, 629–30 (1973), where the Court, in upholding an Illinois storage tax on aviation fuel consumed by the taxpayer's aircraft in interstate flights, stated:

"The line drawn between an impermissible tax on mere consumption of fuel, as in *Helson,* and a permissible tax on storage of fuel before loading, as in *Edelman* and *Nashville,* continues to serve rational purposes. Retaining the line at this point minimizes the danger of double taxation and yet provides a source of revenue having a relation to the event taxed. Double taxation is minimized because the fuel cannot be taxed by States through which it is transported, under *Michigan-Wisconsin Pipe Line Co. v. Calvert,* 347 U.S. 157 (1954), nor by the State in which it is merely consumed, under *Helson.* A fair result is achieved because a State in which preloading storage facilities are maintained is likely to provide substantial services to those facilities, including police protection and the maintenance of public access roads."

Here, the department seeks to impose a use tax on that amount of natural gas consumed in engines which provide the pressure necessary to propel the great bulk of the taxpayer's gas through interstate commerce. Although this activity takes place within the state, we are satisfied that this consumption is an integral part of the process of interstate commerce which does not have a substantial nexus with the state. Thus, it remains immune from state taxation by reason of the Commerce Clause.

*By the Court.*—Judgment affirmed.

DAY, J., took no part.