**QUESTAR PIPELINE COMPANY,**
Petitioner,

v.

**UTAH STATE TAX COMMISSION,**
Respondent.

No. 900228.

Supreme Court of Utah.

Aug. 1, 1991.

Gary G. Sackett, Salt Lake City, for petitioner.

R. Paul Van Dam, Leon A. Dever, Salt Lake City, for State Tax Com'n.

DURHAM, Justice:

This is a petition for review of a Utah State Tax Commission (the Commission) decision issued April 12, 1990. The Commission issued findings of fact, conclusions of law, and a final decision. It held that the gas used to fuel Questar Pipeline Company's (Questar) compressors within the state of Utah is subject to the state's use tax. The Commission then denied Questar's request for a refund of the use tax and applicable interest. Questar paid the tax under protest, subject to the outcome of legal proceedings. Questar filed a petition for review in this court, requesting review of the entire decision rendered by the Commission.

The parties stipulated to the facts in this case. Questar Pipeline Company is a Utah corporation engaged in the transportation of natural gas. Questar owns and operates an interstate natural gas pipeline system in Utah, Wyoming, and Colorado. In addition to an extensive mainline transmission system, the Utah portion of the pipeline includes three underground storage reservoirs. There are compressor facilities located at each of these storage reservoirs and an additional mainline compressor facility in northeastern Utah. The gas passes through the compressors to provide the necessary pressure differential to move and store the gas prior to its final delivery to a local distribution company in Utah. The fuel used to operate the compressors is natural gas (the compressor-fuel gas). The compressor-fuel gas is diverted directly from the flowing gas in Questar's pipeline. Some of that gas originates in Utah. The compressor-fuel gas is not the subject of a sale or intracorporate transfer. Either it is owned by petitioner as part of its system or it is gas that belongs to an individual shipper. The compressor-fuel gas is not physically separated and stored for further use, nor does it "come to rest" before its consumption.

The issue in this case is whether the Commission violated the federal constitution's commerce clause by applying a sales and use tax to the compressor-fuel gas diverted from the flowing gas in Questar's pipeline and consumed in fueling Questar's compressors.[1] Questar asserts that there is not a sufficient nexus between the taxed activity and the state of Utah. The Commission held that under the standards set forth by the United States Supreme Court in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), and *National Geographic Society v. California Board of Equalization,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), there is a substantial nexus with the state and a tax is not precluded by the commerce clause. We agree with the Commission and affirm.

The proceeding in this case was "commenced by or before an agency on or after January 1, 1988." Utah Code Ann. § 63–46b–22(1) (Supp.1991). Our judicial review is therefore governed by the procedures set out in the Utah Administrative Procedures Act (UAPA). *Id.* §§ 63–46b–1 to –22 (1989 & Supp.1991). That statute permits us to grant relief if we determine that Questar has been substantially prejudiced by an agency action which is unconstitutional or based on a statute or rule which is unconstitutional. *Id.* § 63–46b–16(4)(a) (1989). Section 63–46b–16(4) deals with judicial relief, not judicial review. *Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 584 (Utah 1991). Although some of the subsections of section 63–46b–16(4) incorporate specific standards of review, *Morton Int'l,* 814 P.2d at 584, taken individually, subsection 63–46b–16(4)(a) is not helpful in that regard. Constitutional questions are, however, characterized as questions of law, *Morton Int'l,* 814 P.2d at 584, and under subsection 63–46b–16(4)(d)

[1.] The tax covers the period from July 1, 1984, through June 30, 1987.

of the UAPA, agency determinations of general law—which we hold include interpretations of the state and federal constitutions—are to be reviewed under a correction of error standard, giving no deference to the agency's decision. *See Savage Indus. v. State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991). The standard is the same as that applied before the UAPA was enacted. *Id.* (citing *Utah Dep't of Admin. Serv. v. Public Serv. Comm'n*, 658 P.2d 601, 608 (Utah 1983)).

■ The Commission's assessment of the sales and use tax in this case was based on the Utah Code and the Commission's rules. The relevant statute states:

(1) There is levied a tax on the purchaser for the amount paid or charged for the following:

...;

(c) gas, electricity, heat, coal, fuel oil, or other fuels sold or furnished for commercial consumption....

Utah Code Ann. § 59–12–103(1)(c) (1987).[2] The Utah Administrative Rules provide:

The fact that tangible personal property is used in this state in interstate or foreign commerce does not exempt the use of the property from the tax.

Utah Admin. Code R865–21–16U(B) (1990). Standing alone, the provisions of the statute and rules would allow the imposition of Utah's sales and use tax on Questar's compressor-fuel gas. Utah law, however, also recognizes that the state's taxing authority is subject to federal law. Utah Code Ann. § 59–12–104(12) (1987) exempts "sales or use of property which the state is prohibited from taxing under the Constitution or laws of the United States." Questar asserts that the supremacy clause, U.S. Const. art. VI, cl. 2, the commerce clause, U.S. Const. art. I, § 8, cl. 3, and Utah Code Ann. § 59–12–104(12) (1987) preempt a sales and use tax on their compressor-fuel gas. An analysis of the case law reveals the inaccuracy of this contention.

In *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the United States Supreme Court held that application of a Mississippi tax on interstate activity was constitutional under the principle that interstate commerce must pay its fair share of the burden of state taxation. *Complete Auto* ruled that a state tax will be sustained against a commerce clause challenge when the tax (1) "is applied to an activity with a substantial nexus with the taxing State," (2) "is fairly apportioned," (3) "does not discriminate against interstate commerce," and (4) "is fairly related to the services provided by the State." *Id.* at 279, 97 S.Ct. at 1079. On appeal, the parties do not dispute that the last three elements of the *Complete Auto* test are satisfied. The only element in dispute is the requirement of a substantial nexus between the taxed activity and the taxing state.

The language of *Complete Auto* focuses on the relationship of the taxed activity to the state. *National Geographic Society v. California Board of Equalization*, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), decided a few weeks after *Complete Auto*, emphasizes, however, that nexus can be determined by looking at more than just the taxed activity. In *National Geographic*, the Supreme Court upheld a use tax on the solicitation of advertising copy for a magazine. Quoting *Miller Brothers Co. v. Maryland*, 347 U.S. 340, 344–45, 74 S.Ct. 535, 538–39, 98 L.Ed. 744 (1954), the Court stated:

[T]he relevant constitutional test to establish the requisite nexus for requiring an out-of-state seller to collect and pay the use tax is not whether the duty to collect the use tax relates to the seller's activities carried on within the State, but simply whether the facts demonstrate "some definite link, some minimum connection, between [the State and] the *person ...* it seeks to tax."

**2.** Section 59–12–103 was enacted by the 1987 Utah Legislature and applies to the later portion of the audit period under consideration here. The predecessor to section 59–12–103 was section 59–16–3(a) (Supp.1986), which contains a functionally similar provision. The analysis in this opinion is applicable to both statutes to the extent they respectively cover the audit period July 1, 1984, through June 30, 1987.

*National Geographic,* 430 U.S. at 561, 97 S.Ct. at 1393 (emphasis added). *Miller Brothers* itself states that "due process requires some definite link, some minimum connection, between a state and the *person, property or transaction* it seeks to tax." *Miller Brothers,* 347 U.S. at 344–45, 74 S.Ct. at 539 (emphasis added). The nexus, therefore, can be either between the activity which is sought to be taxed and the state or between the person or entity that the state is seeking to tax and the state. The activity the state is trying to tax is not the only link that may be considered to determine whether the nexus prong of the *Complete Auto* test is satisfied.

One of the principle cases upon which Questar relies is *Midwestern Gas Transmission Co. v. Wisconsin Department of Revenue,* 84 Wis.2d 261, 267 N.W.2d 253 (1978). In that case, the taxpayer, a foreign corporation, was an interstate pipeline company that purchased natural gas from outside the state and sold it to customers within the state. The pipeline operations included two compressors located within Wisconsin that, as in this case, took gas from the pipeline stream in order to fuel the compressors. 267 N.W.2d at 253–54. The *Midwestern Gas* court found that there was not sufficient nexus to justify taxation. *Id.* at 258. Although at first glance the facts of *Midwestern Gas* and this case appear similar, we conclude that this court must reach a different result for the following reasons.

First, in declaring the pipeline company's consumption nontaxable, the *Midwestern Gas* court relied in part on the "comes to rest" doctrine. *See id.* at 255–56. That doctrine has subsequently been discredited by the Supreme Court as no longer applicable or relevant under the *Complete Auto*

test. *See D.H. Holmes Co. v. McNamara,* 486 U.S. 24, 30–31, 108 S.Ct. 1619, 1623, 100 L.Ed.2d 21 (1988). Further, there are some significant factual differences between *Midwestern Gas* and this case. Here, some of the gas originates within the state of Utah,[3] which was not the case in *Midwestern Gas.* Also, Questar is not a foreign corporation; its operations are based in Utah. Under the reasoning of *National Geographic,* Questar's operations *as a whole* have a much clearer nexus with the state of Utah than the taxpayer had with Wisconsin in *Midwestern Gas.*[4]

In this case, Questar is a Utah corporation with corporate offices in the state. It owns and operates an extensive network of pipelines throughout the state and conducts transportation, sales, and storage activities here. Without the activity taxed—the direct diversion of gas from Questar's pipeline to fuel the compressors—the entire operation would cease to function. We affirm the Commission's conclusion that Questar, through its activities in conducting the operations of the pipeline and compressors, does have a substantial nexus with the state, and the gas used to fuel those compressors is subject to Utah's use tax under section 59–12–103(1)(c) (1987 & Supp.1991) and its predecessor and under R865–21–16U(B) of the Utah Administrative Code.

HALL, C.J., HOWE, Associate C.J., and STEWART, and ZIMMERMAN, JJ., concur.

---

**3.** Questar asserts that no factual record was developed on this issue and yet concedes that a portion of the gas does originate in Utah. The Commission in one conclusion of law similarly ruled that some of the compressor-fuel gas originates in Utah.

**4.** For similar reasons, we find no merit in Questar's reliance on the dicta in *Goldberg v. Sweet,* 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989), which state that it is doubtful whether the termination of an interstate phone call, by itself, provides a sufficient nexus for a state to tax a call.