James C. PLEDGER, Commissioner of Revenues, Department of Finance & Administration, State of Arkansas *v.* ARKLA, INC.

91-136                                          827 S.W.2d 126

Supreme Court of Arkansas
Opinion delivered March 30, 1992
[Rehearing denied May 4, 1992.*]

*Corbin, J., would grant rehearing.

12

*Cora L. Gentry*, Revenue Legal Counsel, for appellant.

*Blanchard, Walker, O'Quin & Roberts*, by: *J. Edgerton Pierson, Jr.*; and *Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellee.

JACK HOLT, JR., Chief Justice. The main issue in this case concerns the authority of the Department of Finance and Administration for the State of Arkansas (DFA) to tax the natural gas taken by the appellee, Arkla, Inc. (Arkla), from its interstate transmission pipelines located in Arkansas to fuel compressors at its compressor stations and Arkla's entitlement to an exemption from such a tax.

Arkla is a Delaware corporation that has its principal places of business in Little Rock, Arkansas, and Shreveport, Louisiana. During the period of January 1, 1976, through February 28, 1987, Arkla was engaged in the business of producing, buying, transporting, and selling natural gas in the states of Arkansas, Louisiana, Kansas, Oklahoma, and Texas. Arkla bought natural gas in these states and transported it through its interstate transmission pipelines to points in those states where the gas was metered for sale to residential, industrial, and commercial customers.

To facilitate the transportation of the natural gas, Arkla maintained compressor stations to pump the gas along the interstate transmission pipeline. Three of these compressor stations are located in Arkansas and are at issue in this case because Arkla diverted some of the natural gas in the interstate pipeline to power the compressors at the stations.

In February 1979, Arkla filed a claim with the DFA for credit of the Arkansas sales tax ($31,222.18) that it had paid from January 1976 through December 1978 on this fuel. The DFA did not respond to Arkla's claim, whereupon Arkla claimed the credit on its 1980 Arkansas sales tax report. Subsequently, Arkla did not report any state or local taxes attributable to the value of the natural gas consumed as compressor fuel at the three compressor stations.

The DFA audited Arkla's Arkansas sales tax reports filed for the periods from January 1, 1980, through February 28, 1987, and proposed deficiency assessments of additional sales tax,

penalties, and interest based on its determination that the compressor fuel was taxable.

Arkla protested the DFA's proposed assessments to the DFA's Hearing Board, which sustained the assessments. Arkla then paid, under protest, the amounts in controversy and filed this suit for refund in the Pulaski County Chancery Court. From the Special Chancellor's judgment in favor of Arkla, the DFA appeals and asserts four points of error: 1) that the chancellor erred in finding that Arkla has shown its entitlement to an exemption beyond a reasonable doubt, 2) that the chancellor erred in allowing Arkla to take a credit without a showing that the statutory requirements of the Tax Procedure Act had been met, 3) that the chancellor erred in finding that the penalty assessed by the DFA was without basis, and 4) that the chancellor erred in its award of attorneys' fees.

We agree that the chancellor erred in finding that Arkla has shown its entitlement to an exemption from the Arkansas Gross Receipts Tax Act of 1941 (Tax Act) beyond a reasonable doubt and reverse and remand.

In *Ragland* v. *Dumas*, 292 Ark. 515, 732 S.W.2d 118 (1987), we noted that the standard of review for tax exemption cases is trial *de novo* on the record, and we will not reverse the chancellor's findings of fact unless they are clearly erroneous. Further, the party claiming an exemption from taxes has the burden of proving his entitlement beyond a reasonable doubt; tax exemptions must be strictly construed against exemption, and to doubt is to deny the exemption. (Citations omitted.)

Arkansas Code Ann. § 26-52-301 (Supp. 1991) addresses the tax levied under the Tax Act and provides in pertinent part that "[t]here is levied an excise tax of three percent (3%) upon the gross proceeds or gross receipts derived from all sales to any person of the following: . . . 2) Natural or artificial gas . . . ." Ark. Code Ann. § 26-52-103(a)(4) (Supp. 1991) defines the terms "gross proceeds" and "gross receipts" to include "the value of any goods, wares, merchandise, or property withdrawn or used from the established business or from the stock in trade of the established reserves for consumption or use in such business or by any other person."

Arkla does not assail the nature of the tax, i.e. a sales rather than a use tax; it challenges the State's authority to enforce such a tax on the basis that 1) U.S. Const. art 1, § 8, cl. 3 (the Commerce Clause) allows Congress to regulate commerce among the several states and thus prohibits the imposition of a sales tax by the State in this instance, and 2) it claims an exemption from the Tax Act under Ark. Code Ann. § 26-52-401(16) (Supp. 1991), which provides that there is specifically exempted from the tax imposed by the Tax Act "[g]ross receipts or gross proceeds derived from sales for resale which the state is prohibited by the Constitution and laws of the United States from taxing or further taxing, or which the state is prohibited by the Arkansas Constitution from taxing or further taxing."

In *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274 (1977), a movement case that held that a state privilege tax on the business of moving goods in interstate commerce is not *per se* unconstitutional, the United States Supreme Court ruled that a state tax will be sustained against a commerce clause challenge when the tax 1) is applied to an activity with a substantial nexus with the taxing State, 2) is fairly apportioned, 3) does not discriminate against interstate commerce, and 4) is fairly related to the services provided by the State.

Later, the Supreme Court applied the *Complete Auto* factors, and reinforced its position, in *Washington Rev. Dept.* v. *Stevedoring Assn.*, 435 U.S. 734 (1978), and determined in that case that the State of Washington's business and occupation tax did not violate the Commerce Clause by taxing the interstate commerce activity of stevedoring within the state even though it was a direct tax on the privilege of conducting interstate business. The Court noted that "[a]ll tax burdens do not impermissibly impede interstate commerce. The Commerce Clause balance tips against the tax only when it unfairly burdens commerce by exacting more than a just share from the interstate activity."

Most recently, the Supreme Court of Utah in *Questar Pipeline Co.* v. *Utah State Tax Comm'n*, 817 P.2d 316 (Utah 1991), has held that the tax commission did not violate the commerce clause by applying a use tax to compressor-fuel gas that was diverted from the flowing gas in Questar's interstate pipeline and consumed in fueling its compressors. Although the

only prong of the *Complete Auto* test that was at issue in that case was the "substantial nexus" point, the court's analysis of the constitutional issue and prior case law is persuasive:

> One of the principle cases upon which Questar [and, in this case, Arkla] relies is *Midwestern Gas Transmission Co.* v. *Wisconsin Dept. of Revenue*, 84 Wis.2d 261, 267 N.W.2d 253 (1978). In that case, the taxpayer, a foreign corporation, was an interstate pipeline company that purchased natural gas from outside the state and sold it to customers within the state. The pipeline operations included two compressors located within Wisconsin that, as in this case, took gas from the pipeline stream in order to fuel the compressors. *Id.* 267 N.W.2d at 253-54. The *Midwestern Gas* court found that there was not sufficient nexus to justify taxation. *Id.* at 258. Although at first glance the facts of *Midwestern Gas* and this case appear similar, we conclude that this court must reach a different result for the following reasons.

> First, in declaring the pipeline company's consumption nontaxable, the *Midwestern Gas* court relied in part on the "comes to rest" doctrine. *See id.* at 255-56. That doctrine has subsequently been discredited by the Supreme Court as no longer applicable or relevant under the *Complete Auto* test. *See D.H. Holmes Co.* v. *McNamara*, 486 U.S. 24 (1988). Further, there are some significant factual differences between *Midwestern Gas* and this case. Here, some of the gas originates within the state of Utah, which was not the case in *Midwestern Gas*. Also, Questar is not a foreign corporation; its operations are based in Utah. Under the reasoning of *National Geographic*, Questar's operations as a whole have a much clearer nexus with the state of Utah than the taxpaper had with Wisconsin in *Midwestern Gas*.

> In this case, Questar is a Utah corporation with corporate offices in the state. It owns and operates an extensive network of pipelines throughout the state and conducts transportation, sales, and storage activities here. Without the activity taxed — the direct diversion of gas

from Questar's pipeline to fuel the compressors — the entire operation would cease to function. We affirm the Commission's conclusion that Questar, through its activities in conducting the operations of the pipeline and compressors, does have a substantial nexus with the state and the gas used to fuel those compressors is subject to Utah's use tax . . . .

■ Applying the *Complete Auto* factors and *Washington Rev. Dept.* v. *Stevedoring Assn., supra,* rationale to this case, we note that Arkla has presented no facts that would justify invalidation of the sales tax. The obvious nexus between Arkla and the State of Arkansas is supported by the fact that some of the gas in Arkla's pipeline originates in Arkansas and, although Arkla is a Delaware corporation, one of its two stated principal places of business is in Little Rock, Arkansas. Also, as in *Questar,* Arkla owns and operates an extensive network of pipelines throughout Arkansas in which it produced, bought, transported, and sold natural gas. Consequently, there is a substantial nexus between Arkla and Arkansas to satisfy the first point of the *Complete Auto* test.

■ Next, in determining that the tax is fairly apportioned, we find it significant that the gas at issue is actually consumed in Arkansas; only that gas consumed in the state is subject to the tax, and no other state will tax the withdrawn gas once it is consumed.

In assessing the third factor, we find that Arkla has not shown how the tax at issue discriminates against interstate commerce.

■ Finally, the State of Arkansas provides numerous services to Arkla, and there is nothing in this record which suggests that Arkla doesn't avail itself of all of the amenities provided by the State to businesses operating within the state, i.e. police and fire protection, access to roads, etc. Therefore, nothing in the record suggests that the tax is not fairly related to the services and protection provided by the state.

■ Accordingly, for the foregoing reasons, we find that the elements encompassed in the *Complete Auto* test have been satisfied, and, consistent with *Complete Auto, supra,* and *Washington Rev. Dept.* v. *Stevedoring Assn., supra,* the imposition of a

sales tax on the fuel consumed in Arkla's compressor stations is not constitutionally impermissible and that Arkla is not entitled to an exemption under section 26-52-401(16). Consequently, we need not address the DFA's remaining three arguments, and the judgment of the trial court is reversed and remanded.

GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. The majority decision raises more questions than it answers. Basically it relies upon the cases of *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 244 (1977), and *Questar Pipeline Co.* v. *Utah State Tax Comm'n*, 817 P.2d 316 (Utah 1991), to reverse the trial court's holding that Arkansas could not constitutionally impose a sales tax on the fuel consumed in Arkla's compressor stations.

In reaching its result, the majority opinion fails to mention three cases cited by Arkla that were decided before and after *Complete Auto* and appear to go contrary to this court's decision. *See Midwestern Gas Transmission Co.* v. *Wisconsin Department of Revenue*, 84 Wis. 2d 261, 267 N.W.2d 253, *cert. denied*, 439 U.S. 997 (1978), (a case that presented a factual situation similar to the one here and where the Wisconsin Supreme Court held Wisconsin's attempt to impose a use tax upon natural gas consumed as compressor fuel at the pipeline's interstate compressor stations in Wisconsin was prohibited by the Commerce Clause); *see also* similar use tax on compressor fuel cases predating *Complete Auto, Texas Gas Transmission Corp.* v. *Benson*, 444 S.W.2d 137 (Tenn. 1969), and *Michigan Wisconsin Pipeline Co.* v. *State*, 58 Mich. App. 318, 227 N.W.2d 334 (Mich. App. Div. 2 1975).

Also, the *Questar* decision cited by the majority is not embraced by Arkla or the state. In fact, the state recognizes the weakness of *Questar*, stating that "if [this] court chooses to follow the rationale of the Utah Supreme Court in the *Questar* decision, legal and factual distinctions between the cases should be clearly outlined." The majority opinion ignores the state's request.

The state's point in distancing itself from *Questar* is, like the three cases cited above by Arkla, the Utah decision involved a use tax, not a sales tax. Why the distinction? The state is aware of

18

Arkansas law, Ark. Code Ann. § 26-53-106 (Supp. 1991), and this court's decisions construing it. That statute provides in pertinent part as follows:

> (a)    There is levied and there shall be collected from every person in this state a tax or excise for the privilege of storing, using, distributing, or consuming within this state any article of tangible personal property purchased for storage, use, distribution, or consumption in this state at the rate of three percent (3%) of the sales price of the property.

> (b)    This *tax will not apply* with respect *to* the storage, *use*, distribution, *or consumption of any* article of tangible *personal property* purchased, *produced*, or manufactured *outside this state until* the transportation of *the article* has finally *come to rest within this state* or until the article has become commingled with the general mass of property of this state. (Emphasis added.)

In interpreting the foregoing statute, we have said that if the goods have not "come to rest" within the state, they are still in the stream of interstate commerce, and a tax may not be levied. *Martin* v. *Riverside Furniture Co.*, 292 Ark. 399, 730 S.W.2d 483 (1987).

*In the present case, the evidence stands unrefuted that the fuel involved has not (and would never) "come to rest."* Being cognizant of this fact, the state is aware it is unable under Arkansas law to levy a tax on Arkla's fuel unless it can do so under a theory other than one pertaining to use tax. Consequently, it contends the Arkla fuel is subject to Arkansas's sales tax, which does not necessarily depend upon the fuel coming to rest in this state.

The state argues the standard in a sales tax case is "did the sale occur in Arkansas?" It then suggests that, under Ark. Code Ann. § 26-52-103(a)(4) (Supp. 1991), the sale here occurred when Arkla withdrew its gas from its pipeline for its own consumption. The state cites *Georgia Pacific Corp.* v. *Larey, Commr.*, 242 Ark. 428, 413 S.W.2d 868 (1967), and theorizes that, while no actual transfer or sale is made by Arkla to a buyer, Arkla, in withdrawing the small amount of fuel here, is actually

transferring that fuel from "Arkla the Interstate Shipper" to "Arkla the Consumer of Natural Gas."

The state's argument is ingenious, but ignores the record in this case. At each compressor station along Arkla's interstate transmission line, Arkla diverts a small amount of natural gas from the gas in transit and burns that gas only to power the compressors that work to continue the gas in route to destinations in other states. Arkansas cases such as *Georgia Pacific* are authority for imposing a sales tax on property withdrawn from a company's stock when the withdrawn property is utilized for the *company's own personal use*. Again, the evidence reflects that the small amount of fuel diverted for compressor purposes is constantly flowing and is consumed within no more than three minutes of its being diverted from the mass of gas being transported in the interstate transmission pipeline. The compressor fuel is not withdrawn for Arkla's personal or domestic use. The diverted gas is never metered in Arkansas or regulated by the Arkansas Public Service Commission. Instead, such gas is regulated and controlled entirely by the Federal Energy Regulatory Commission.

In conclusion, the majority opinion attempts to sidestep the issue bearing on the state's authority under Arkansas law to impose a tax by stating Arkla never assailed the nature of the tax, i.e., sales versus use. In making such statements, the majority court conveniently ignores the state's own argument which is predicated upon the fact that it imposed a sales rather than a use tax on Arkla's compressor fuel. As mentioned above, the state, in view of the evidence presented in this case, cannot justify a use tax under Arkansas law because the fuel had never "come to rest" within the state. For this and other reasons, the state insisted below, and in this appeal, that the nature of the tax imposed *is* significant. To reiterate, the state emphasized that, if this court relies upon Utah's *Questar* case, (which the majority cites), the court should clearly outline why. The state's reason for making such a request is because the court in *Questar* appeared to justify the Utah tax as a use tax on compressor-fuel gas, which differs significantly from the sales tax theory the state asserts here.

The state wishes to accept the result reached in the *Questar* decision, but it cites *not one case* involving compressor-fuel where

a court has upheld a tax, as a *sales* tax, on such fuel.[1] The *Questar* case reaches the result the state here seeks, but the use tax rationale that underpins that decision creates other potential problems for the state which I have already described above.

I agree with the majority opinion that the Commerce Clause does not necessarily forbid a state from imposing a tax on interstate activity. However, that is not the threshold issue in this case. Under the facts and Arkansas law here, Arkansas clearly is unauthorized to impose a sales or use tax. The state's characterization of Arkla's burning of its compressor fuel as a withdrawal, transfer, or sale falls short of the requirements and express purposes of Arkansas's Gross Receipts Law, § 26-52-103(a)(4). Nor can a use tax be assessed when the fuel in question has never come to rest in this state. The decision reached by the trial court is correct and should be affirmed.

For the foregoing reasons, I respectfully dissent.

CORBIN, J., joins this dissent.

---

[1] The recent case of *Tennessee Gas Pipeline Co.* v. *Marx*, 90-CC-1253 (Miss. February 5, 1992) (decided after the present case was submitted and argued on appeal), upheld Mississippi's imposition of a *use* and excise *tax* on compressor fuel that was used by the Tennessee Company for the same purposes and in the same manner Arkla used its compressor fuel, *viz.*, to propel natural gas through an interstate pipeline. This Mississippi decision seems to be consistent with the *Questar* holding.

