The Honorable Jerry Allison State Representative 26 CR 744 Jonesboro, AR 72401-0538
Dear Representative Allison:
I am writing in response to your request for my opinion on several questions relating to whether the state of Arkansas can charge sales tax on trucks and trailers that were initially registered in Oklahoma. You have provided supporting information that indicates the vehicles at issue were exempt from sales tax but subject to "a flat $10.00 excise tax per tractor or trailer" while registered in Oklahoma. You have provided the following additional information:
 Many trucking firms headquartered in Arkansas, but with business contacts in Oklahoma, have for some years registered and base-plated trucks and trailers in Oklahoma (Oklahoma charges no sales taxes on trucks or trailers purchased for use in interstate commerce and registered in Oklahoma). The Oklahoma Tax Commission allowed truck owners to register equipment by contracting with a third party agent in Oklahoma. The agent typically lists the agent's address as the trucking company address, telephone number, and other requirements.
 Recently, Illinois challenged the methods and procedures under which Oklahoma was registering IRP trucks and trailers.[1] The IRP Board sanctioned Oklahoma to rewrite its rules regarding "established place of business." Oklahoma is no longer accepting registrations from some trucking firms in Arkansas that registered through third party agents. In order to register trucks and trailers under the new rules, an out-of-state trucking firm must now establish a separate place of business in Oklahoma and maintain records there, and have a separate telephone for each trucking firm. The new rules have created a dilemma for Arkansas businesses that, in the past, have registered through third party agents, but now must register in Arkansas or another state.
 During a recent meeting of the House Interim Committee on Public Transportation, Mr. Fred Porter of the Arkansas Department of Finance and Administration explained that the Department intends to levy sales tax on trucks and trailers purchased in the last three (3) years which had been previously registered in Oklahoma. He explained that truck operators that should have registered trucks in Arkansas all along would have the title records examined and would be assessed back sales taxes for any purchase of equipment during the last three (3) years. Three years is apparently the statute of limitations on back sales taxes in Arkansas.
Against this backdrop, you have posed the following questions:
 1. Can the State of Arkansas assess sales tax on a motor carrier for trucks and trailers that were base-plated in Oklahoma and that are subsequently registered in Arkansas?
 2. If the answer to Q1 is "yes," is it mandatory that Arkansas look-back three (3) years to charge the sales taxes?
RESPONSE
In my opinion, assuming the facts to be as you have recounted them, I believe a court would likely answer your first question in the affirmative. I believe the answer to your second question is "no."
Question 1: Can the State of Arkansas assess sales tax on a motor carrierfor trucks and trailers that were base-plated in Oklahoma and that aresubsequently registered in Arkansas?
The law regarding the imposition of sales and use taxes is set forth in the Arkansas Gross Receipts Act of 1941, A.C.A. § 26-52-101 et seq.
(Repl. 1997 Supp. 2001) and the Arkansas Compensating Tax Act of 1949 (A.C.A. § 26-53-101 et seq. (Repl. 1997 Supp. 2001), respectively. Subsection 26-52-301(1) of the Code (Supp. 2001) imposes a 3% sales tax upon all "tangible personal property" sold in the state. Subsection26-53-106(a) (Repl. 1997) imposes a tax in the same amount "for the privilege of storing, using, distributing or consuming within this state any article of tangible person property purchased for storage, use, distribution, or consumption in this state." This use tax applies to all vehicles bought out of state and stored, used, distributed or consumed in this state. Assuming the trucks and trailers at issue in your request meet the conditions for imposing a use tax — a determination only a finder of fact can make on a case-by-case basis — they will be subject to taxation, as will all trucks and trailers sold in this state. I do not believe any vehicle or trailer subject to taxation under the above standards would qualify for any of the exemptions set forth at A.C.A. §§26-52-401 et seq. and 26-53-114, which carve out exceptions to sales tax and use tax, respectively. In short, then, state law clearly authorizes imposing a sales tax on trucks and trailers "sold" in the state and a use tax on any trucks and vehicles "used" here in the sense just discussed.
The statutory authority discussed in the preceding question will control unless some constitutional objection might preclude enforcement of the Code. In my opinion, the provisions at issue invite analysis in terms of the commerce clause, U.S. Const. art. 1, § 8, cl. 3, which prohibits legislation that burdens interstate commerce. The Arkansas Supreme Court applies different standards in testing the legality of sales and use taxes. With respect to in-state sales subject to sales tax, the court restricts itself to applying the four-prong test set forth in CompleteAuto Transit v. Brady, 430 U.S. 274, 279 (1977), under which a tax will pass muster under the commerce clause so long as it: 1) is applied to an activity with a substantial nexus with the taxing state, 2) is fairly apportioned, 3) does not discriminate against interstate commerce, and 4) is fairly related to the services provided by the State. See AmericanTrucking Association v. Gray, 288 Ark. 488, 495, 707 S.W.2d 759 (1986) (in addressing any state tax challenged on commerce clause grounds, a court must apply the four-prong test set forth in Complete Auto Transit). However, in Mississippi River Transmission Corp. v. Weiss, 347 Ark. 543,549, 65 S.W.3d 867 (2002), the court recently noted that an additional statutory standard applies in determining the constitutionality of a use tax. Specifically the court focused on the application of A.C.A. §26-53-106(b), which provides:
 This tax will not apply with respect to the storage, use, distribution, or consumption of any article of tangible personal property purchased, produced, or manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article has become commingled with the general mass of property of this state.
347 Ark. at 549. In interpreting the "come-to-rest" provision of this statute, the court remarked:
 This court has applied the Complete Auto Transit factors to our sales tax statute when a sales tax was levied on compressor gas. See Pledger v. Arkla, Inc., supra [309 Ark. 10, 827 S.W.2d 126 (1992)]. However, the sales tax statute at issue in Pledger, Ark. Code Ann. § 26-53-301(Repl. 1991), had no come-to-rest language as does the use tax statute. Thus, the fact that this court used the Complete Auto Transit
test in Pledger has no application to the case at hand.
 We decline to adopt the Complete Auto Transit factors and substitute them for the come-to-rest test, when our General Assembly has enacted the come-to-rest requirement and that test is still part of the statute. We observe in this regard that the Complete Auto Transit
decision was decided by the Court in 1977, and the General Assembly has had twelve opportunities since that time to amend the use tax statute and substitute the less stringent substantial nexus test set out in Complete Auto Transit. It has not done so. For these reasons, we agree . . . that we should apply the come-to-rest standard in the use tax statute just as we find it codified at § 26-53-106(b) and not amend it by judicial decision to substitute the Complete Auto Transit test.
Id.
This passage is somewhat misleading in suggesting that the "come-to-rest" test is an alternative, rather than a supplement, to the Complete AutoTransit test. Recognizing that the U.S. Supreme Court is just that, "supreme," in pronouncing on matters of constitutional law, including application of the commerce clause, I can only read the passage just quoted as merely acknowledging that the legislature has imposed a statutory requirement — namely, that personal property bought out of state must "come to rest" in Arkansas before being taxable — that applies in addition to the constitutional requirements set forth in Complete AutoTransit.[2] I consider this reading consistent with the court's characterization of the Complete Auto Transit standard as "less stringent" than that applicable in Arkansas. It is further consistent with the court's pronouncement in Burlinton Northern Railroad Co. v.Ragland, 280 Ark. 182, 186, 655 S.W.2d 437 (1983), that "whenever there is a challenge to any state tax on interstate commerce, the tax will be subjected to the [Complete Auto Transit] test." (Emphasis added.) Accordingly, I will analyze the constitutionality of both the sales and use taxes by applying the Complete Auto factors. With respect to the statutory prong applicable to the use tax, I can only note that the question of whether any particular vehicle "comes to rest" in Arkansas is one of fact that I cannot address.
As you have recounted the facts, all of the trucking firms to be charged with the tax are headquartered and presumably do substantial business in Arkansas. It would thus appear that the first Complete Auto Transit prong would be easily met. In Northwest Airlines v. Minnesota, 322 U.S. 292
(1944), the Supreme Court held that the fact that Northwest was incorporated and headquartered in Minnesota in itself justified the state in imposing property tax on the airline's entire fleet, notwithstanding the fact that individual planes in the fleet were frequently located out of state. The Court held that the domiciliary state enjoys an absolute power to tax so long as the personal property at issue has not acquired "an actual situs elsewhere" — a condition the Court noted would apply only if the personal property were located outside the domiciliary state for the entire taxable year. Id. at 295-96. See A.C.A. § 26-53-102(2) (exempting stored goods from use tax only if they are intended for resale or "subsequent use solely outside this state"). Although the issue is ultimately one of fact, I believe a court would readily find a "substantial nexus" with Arkansas if the vehicles and equipment at issue were housed in and operated out of this state.
With respect to the second Complete Auto Transit prong, I do not believe the apportionment of taxes would be an issue under the facts as you have presented them. In Holmes, the Court held: "The Louisiana taxing scheme is fairly apportioned, for it provides a credit against its use tax for sales taxes that have been paid in other States." Id. at 30. Similarly, in Sullivan v. United States, 395 U.S. 169 180 (1969), the Court observed:
 [T]he substantial risk of double taxation under multi-state ad valorem property taxes does not exist with respect to sales and use taxes. . . . [N]early every State which levies such taxes provides a credit for sales or use taxes paid on the transaction in another State.[3]
In the present case, I have serious doubts that an across-the-board $10 excise tax could be characterized as a sales tax, given that the latter category of tax is normally computed as a percentage of purchase price.See, e.g., A.C.A. § 26-52-301. However, even if the Oklahoma tax were deemed a sales tax comparable in its nature to the Arkansas use tax, there would be no apportionment problem since A.C.A. § 26-53-131 provides that any vehicle initially registered in another state and subject to taxation in Arkansas is entitled to a credit in the amount of the tax paid in the other state. I gather from your request that all of the subject vehicles were "base-plated" in Oklahoma prior to their registration in Arkansas, thus triggering this credit in the event the taxes were deemed similar in nature and mooting any issue of double taxation. See also A.C.A. § 26-5-101 Article V (providing that among all states subscribing to the "Multistate Tax Compact," any use tax assessment will be subject to a credit in the amount of sales tax paid in another member state).
With respect to the third prong of the Complete Auto test, I do not believe the proposed tax would discriminate against interstate commerce. As I understand it, regardless of whether the sale occurred in Arkansas or elsewhere, the state would tax the transaction in the same amount. Imposing the tax would consequently not burden commerce in any particular state. Moreover, as discussed above, the situation you describe does not appear to pose any risk of double taxation.
Finally, with respect to the fourth prong of the Complete Auto test, I believe the proposed tax would be fairly related to the services provided by the state. According to your factual summary, the affected trucking companies are all based and all operate in Arkansas, enjoying the full protection of this state's corporate laws and taking full advantage of this state's highway infrastructure. As the Court made clear NorthwestAirlines, supra, corporate citizenship of this sort clearly subjects an entity to the state's taxing authority.
Question 2? : If the answer to Q1 is "yes," is it mandatory that Arkansaslook-back three (3) years to charge the sales taxes?
Subsection 26-18-306(f) of the Code (Supp. 2001) provides:
 In the case if a fraudulent return or failure to file a report or return required under any state tax law, the director may compute, determine, and assess the estimated amount of tax due from any information in his possession or may begin an action in court for the collection of the tax without assessment, at any time.
The Department of Finance and Administration apparently interprets the term "return" broadly to encompass the standard documentation relating to the collection of sales and use taxes — an interpretation I consider consistent with the statutory definition of "return" as including "any tax . . . report." A.C.A. § 26-18-104(11). Accordingly, given that the director has the discretion to assess unreported taxes "at any time," I believe no statute of limitations applies under the circumstances you have described. Compare A.C.A. § 26-18-306(a) (imposing a three-year statute of limitations on assessments involving erroneous filed returns) and A.C.A. § 26-18-306(e) (imposing a six-year statute of limitations for assessments involving understatements in excess of 25% of tax reported). Given the director's discretion to assess taxes pursuant to A.C.A. §26-18-306(f), I do not believe he is subject to any mandatory "look-back" period.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] Additional supporting information supplied by the Arkansas Trucking Association (the "ATA") indicates that the IRP is the "International Registration Plan." According to the ATA:
 IRP is a national quasi-governmental clearinghouse that is affiliated and owned by the American Association of Motor Vehicle Administrators (AAMVA). IRP distributes state registration fees paid by interstate motor carriers to other states based on the miles traveled by each truck in that state. This ensures that all states receive their proportionate share of a truck's registration fee if it travels in that state, regardless of the state in which the equipment is actually registered.
As the Arkansas Supreme Court explained in Gray v. Ragland,277 Ark. 232, 234-35, 640 S.W.2d 788 (1982):
 Arkansas is a member of a multi-state compact called the International Registration Plan (IRP), which allowed truckers based in any member state to register in any other member state. The state in which the trucker registers collects the registration fees which are then apportioned among each member in which the trucker operates according to the number of miles traveled by the trucker in each state. . . . States that are not members of this multi-state compact often enter into reciprocity agreements whereby each grants to the truckers licensed in the other the right to use the highways without paying a registration fee. Members of the IRP are allowed by the terms of the compact to charge "reciprocity miles," which are fees assessed on trucks licensed in the IRP state based on miles traveled by trucks in states that are nonmember states. The purpose of these charges is to prevent trucks from being able to operate free in nonmember states. Arkansas and all other member states charge reciprocity miles, except Illinois.
Arkansas' participation in the IRP represents a reciprocal agreement among the states of the sort expressly authorized at A.C.A. § 27-14-501et seq.
[2] Even this conclusion is somewhat problematic in that the U.S. Supreme Court has all but ignored what appears to have been a statutory "come-to-rest" provision in reviewing a Louisiana use tax. In upholding the Louisiana tax despite the "come to rest" requirement, the Court remarked:
 Complete Auto abandoned the abstract notion that interstate commerce "itself" cannot be taxed by the States. We recognized that, with certain restrictions, interstate commerce may be required to pay its fair share of state taxes. Accordingly, in the present case, it really makes little difference for Commerce Clause purposes whether Holmes' catalogs "came to rest" in the mailboxes of its Louisiana customers or whether they were still considered in the stream of interstate commerce.
D.H. Holmes Co. v. McNamara, 486 U.S. 24, 30-31 (1988). Ironically, inPledger, the court itself invoked Holmes as authority for the proposition that the "comes to rest" doctrine is "no longer applicable or relevant to the Complete Auto test." 309 Ark. at 15.
[3] In holding that providing a credit for taxes paid elsewhere resolves the constitutional issue, Holmes and Sullivan suggest that the Court's primary concern with respect to the commerce clause is to avoid double taxation. See also Goldberg v. Sweet, 488 U.S. 252, 261 (1989) (noting that "[t]o be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result"); Washington Revenue Department v. StevedoringAssociation, 435 U.S. 734, 748 (1978) ("The Commerce Clause balance tips against the tax only when it unfairly burdens commerce by exacting more than a just share from the interstate activity.").