2010 UT 16

**EXXON CORPORATION, ExxonMobil Corporation, and Mobil Exploration & Producing, Petitioners,**

v.

**UTAH STATE TAX COMMISSION, Respondent.**

No. 20081017.

Supreme Court of Utah.

March 12, 2010.

David J. Crapo, Salt Lake City, for petitioners.

Mark L. Shurtleff, Att'y Gen., Clark L. Snelson, Asst. Att'y Gen., Salt Lake City, for respondent.

Mark L. Shurtleff, Att'y Gen., Katharine H. Kinsman, Asst. Att'y Gen., Salt Lake City, for amici Uintah Basin Revitalization Fund and Navajo Revitalization Fund.

PARRISH, Justice:

## INTRODUCTION

¶ 1 This case comes to us after several related prior decisions in which we determined the proper valuation method for the oil and gas severance tax in Utah. We also previously determined the scope of the application of this new method. In this case, we hold that the valuation method announced in our prior cases should apply retroactively to all of ExxonMobil's refund requests before the Utah State Tax Commission.

## BACKGROUND

¶ 2 The original controversy over severance tax valuation began when ExxonMobil, a company created by the merger of Mobil Corporation and Exxon, filed amended severance tax returns for the years 1993–1998 with the Auditing Division of the Utah State Tax Commission (the "Division"). *Exxon-Mobil Corp. v. Utah State Tax Comm'n (Exxon I)*, 2003 UT 53, ¶ 2, 86 P.3d 706.

ExxonMobil filed on behalf of its subsidiary, Mobil Exploration and Producing North America, Inc. ("MEPNA"), which had allegedly overpaid severance taxes based on improper sale valuation. MEPNA was, during the years in question, a wholly owned subsidiary of Mobil Corporation and, subsequent to the 1999 merger, became a wholly owned subsidiary of ExxonMobil. The Division denied the refund request, and ExxonMobil appealed to the Utah State Tax Commission (the "Commission"), which upheld the Division's decision. ExxonMobil then appealed to this court.

¶ 3 In 2003, this court issued an opinion overturning the Commission's decision and establishing a new test for determining the point of valuation for oil and gas sales. *See Exxon I*, 2003 UT 53, ¶ 23, 86 P.3d 706. However, concerned with the effect of this new test, we limited the holding. Specifically, we stated that "as to all but ExxonMobil the rule announced today is to have prospective application only." *Id.* We reasoned "that preventing the retroactive application of the rule to ExxonMobil ... would both deprive ExxonMobil of the fruits of victory and potentially discourage other litigants from challenging [actions] of questionable validity." *Id.* (alteration in original)(internal quotation marks omitted). The case was remanded to the Commission to determine the refund owed to ExxonMobil. *Id.* ¶ 24. In January 2006, the Commission issued a refund to ExxonMobil in the amount of $3.3 million.

¶ 4 Subsequently, ExxonMobil and its subsidiary MEPNA filed several other amended tax returns with the Division requesting refunds for overpaid severance taxes. The Division denied all but one of these requests, finding that our decision in *Exxon I* applied only to MEPNA before the 1999 merger and did not apply to ExxonMobil for any claims other than those at issue in the *Exxon I* decision.

¶ 5 On appeal, ExxonMobil argues the Commission's denial of its requests for refunds misinterprets our directive in the 2003 *Exxon I* decision. We agree, and hold that ExxonMobil is entitled to retroactive application of the rule announced in *Exxon I* for all claims filed with the Commission.

## STANDARD OF REVIEW

¶ 6 We have jurisdiction to hear this appeal under Utah Code section 78A–3–102(3)(e)(ii) (2008). The standard we apply when reviewing an agency's interpretation of general law including "case law, constitutional law, or non-agency specific legislative acts" is a " 'correction of error standard, giving no deference to the agency's decision.' " *King v. Indus. Comm'n*, 850 P.2d 1281, 1285 (Utah Ct.App.1993) (quoting *Questar Pipeline Co. v. Utah State Tax Comm'n*, 817 P.2d 316, 318 (Utah 1991)).

## ANALYSIS

¶ 7 "[T]he retroactive operation of a change in the common law is not invariable and is not a question of judicial power; rather, whether a decision will operate prospectively should depend solely upon an appraisal of the relevant judicial policies to be advanced." *Van Dyke v. Chappell*, 818 P.2d 1023, 1025 (Utah 1991). "Where overruled law has been justifiably relied upon or where retroactive operation creates a burden, the court, in its discretion, may prohibit retroactive operation of the overruling decision. In such instances, prospective operation of a court decision has long been applied." *Loyal Order of Moose, # 259 v. County Bd. of Equalization*, 657 P.2d 257, 265 (Utah 1982) (internal citations omitted). But in exercising this discretion, the court does not dismiss the time spent and expense incurred by successful litigants nor does it deprive them of "the fruits of their victory." *Rio Algom Corp. v. San Juan County*, 681 P.2d 184, 196 (Utah 1984).

¶ 8 We recently affirmed this framework in *Union Oil Co. v. Utah State Tax Commission*, where we denied a request to overturn the prospective relief limitation in *Exxon I* and apply it retroactively to all parties. *See* 2009 UT 78, 222 P.3d 1158.

¶ 9 We held that the rule announced in *Exxon I*, as it relates to parties requesting severance tax refunds, did not require modification and that our concerns about requiring governmental units to repay "already committed and spent funds is still a valid

one." *Id.* ¶ 13. However, *Exxon I* clearly allows the prevailing party, ExxonMobil, to receive the benefit of the new rule for all its claims for overpaid severance taxes.

## I. THE PLAIN LANGUAGE OF OUR HOLDING IN *EXXON I* MANDATES RETROACTIVE APPLICATION OF OUR HOLDING IN *EXXON I* TO ALL SEVERANCE TAX CLAIMS FILED BY EXXONMOBIL

■ ¶ 10 When this court finds a statute unconstitutional or provides the correct interpretation of a rule or law, we have the equitable power to determine whether the new rule will be applied retroactively or prospectively and in doing so we "seek a blend of what is necessary, what is fair, and what is workable." *Rio Algom Corp. v. San Juan County,* 681 P.2d 184, 196 (Utah 1984).

¶ 11 In *Rio Algom,* we struck down a tax statute on constitutional grounds but directed that the holding be prospective only except to the plaintiff taxpayers in that case. *Id.* As to those parties, the holding was "retroactive for the year for which [the] suit for refund was brought." *Id.* Similarly, in *Merrill v. Utah Labor Commission,* we limited the retroactive application of a new rule for workers compensation calculation to certain classes of plaintiffs who had not previously settled their claims. 2009 UT 74, ¶ 18, 223 P.3d 1099.

■ ¶ 12 The Commission argues that, similar to *Rio Algom,* we limited the new rule announced in *Exxon I* to the claims before the court in that case. We disagree. In *Exxon I,* we stated that "ExxonMobil is entitled to further adjudication of its *claim* for a refund." 2003 UT 53, ¶ 24, 86 P.3d 706 (emphasis added). The Commission makes much of our use of the singular term "claim," but when this sentence is read in conjunction with the preceding paragraph, it does not alter the unlimited application of the new rule to ExxonMobil. In paragraph 23 we stated that "whether in refund requests or deficiency proceedings, *as to all but Exxon-Mobil* the rule announced today is to have prospective application only." *Id.* ¶ 23 (emphasis added). We could have limited the retroactive relief for ExxonMobil to the

claims at issue in the case as we did in *Rio Algom,* but we did not. Therefore under the plain language of *Exxon I,* ExxonMobil is entitled to application of the new rule for all its claims for refund of overpaid taxes.

## II. IN *UNION OIL CORP. v. UTAH STATE TAX COMMISSION* WE EXPANDED THE SCOPE OF RETROACTIVE RELIEF ANNOUNCED IN *EXXON I* TO THOSE PARTIES SUBJECT TO DEFICIENCY ACTIONS

¶ 13 While we did not modify the *Exxon I* decision in *Union Oil* as it applies to parties seeking severance tax refunds, we did modify the application of the holding to parties subject to deficiency proceedings initiated by the Division. We take this opportunity to reiterate our holding in *Union Oil.*

¶ 14 In *Union Oil,* we recognized that retroactive application of the *Exxon I* rule to deficiency actions initiated by the Division does not pose the same public policy concerns as application of the rule to taxpayer initiated refund requests. 2009 UT 78, ¶ 20, 222 P.3d 1158. In refund request situations, money has already been collected by governmental agencies and put to use. Requiring a refund of such funds creates a great burden on these agencies and the entities they serve to either refund funds already spent or rely on state general funds to repay the taxpayers when refunds are granted. With deficiency judgments, however, the government never collects the money in the first place and so has no need to pay out funds. *Id.* ¶ 19. As we stated in *Union Oil,* "[t]he only possible adverse result suffered by the State in a deficiency assessment action is a failure to receive additional tax revenue from the taxpayer." *Id.* Therefore, in exercising our equitable discretion, we modified part of our decision in *Exxon I* to allow retroactive application of the new rule to all deficiency assessments and gave Unocal the relief it sought. *Id.* Going forward, all deficiency claims initiated by the Division will be subject to the new severance valuation rule stated in *Exxon I,* but any taxpayer initiated refund requests for taxes paid prior to 2003,

except for ExxonMobil's requests, will not be subject to the new rule.

## CONCLUSION

¶ 15 We clarify today our holding in *Exxon I* as it applies specifically to ExxonMobil. We hold that ExxonMobil is entitled to full retroactive application of the new severance tax valuation rule for all of its refund requests. This is the plain reading of our prior decision and we decline to modify it further. We also recognize the modification of the *Exxon I* opinion rendered in *Union Oil* as it applies to deficiency claims initiated by the Commission.

¶ 16 We accordingly reverse the Commission's denial of ExxonMobil's refund requests and remand to the Commission for further adjudication of ExxonMobil's claims consistent with this opinion.

¶ 17 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH'S opinion.